CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUN 15 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## Lynchburg Division

MELVA TAYLOR DAVIS, Personally and as )
Personal Representative and Administratrix )
of the Estate of Sanchez Jarkel Taylor, )
deceased; )
)
)
)
)
)
      **Plaintiffs,** )
)
v. ) Civil Action No. <u>**6:07 CV00017**</u>
)
The COUNTY OF AMHERST, VIRGINIA; ) **AMENDED CIVIL COMPLAINT**
BRYAN DAVID, FORMER COUNTY )
ADMINISTRATOR FOR AMHERST ) **JURY TRIAL DEMANDED**
COUNTY, VIRGINIA, individually and in his )
official capacity; GARY ROAKES, )
DIRECTOR OF THE AMHERST COUNTY )
VIRGINIA DEPARTMENT OF PUBLIC )
SAFETY, individually and in his official )
capacity; SHERIFF L. J. AYERS, III, )
individually and in his official capacity as )
Sheriff of Amherst County, Virginia; The )
AMHERST COUNTY, VIRGINIA )
SHERIFF'S DEPARTMENT; )
INVESTIGATOR DEBBIE TINNELL, )
individually; SERGEANT DAREN GIVENS, )
individually; DEPUTY BRIAN DREWRY, )
individually; DEPUTY D. K. DODSON, )
individually; DEPUTY BETTY T. WISE, )
individually; and JOHN DOES, Employees )
of the Amherst County, Virginia Sheriff's )
Department, The Virginia State Police, and )
the Town of Amherst Police Department, as )
the case maybe. )

      **Defendants.**

## Nature of the Action

1. This suit arises out of the death of Sanchez Jarkel Taylor ("Taylor") while in the custody of the Amherst County, Virginia Sheriff's Department from Asphyxia due to multiple episodes of Police restraint on June 16, 2005. Defendants, Tinnell, Givens, Drewry, Dodson, and Wise, all members of the Amherst County, Virginia Sheriff's Department restrained Taylor at Bethel Welding located off of Route 29 in Amherst County, Virginia 24521. Mr. Taylor was unarmed and wearing a Central Virginia Community Services Picture Identification Badge, at the time of the incidents of restraint.

2. The Estate of Sanchez Jarkel Taylor (the "Estate"), by its Administratrix, Melva Taylor Davis, brings this suit under 42 U.S.C. § 1983 for declaratory relief, permanent injunctive relief, and damages for violations of Sanchez Jarkel Taylor's right to be free from the use of unreasonable searches and seizures, including freedom from the use of excessive force, under the Fourth and Fourteenth Amendments to the United States Constitution. The Estate also brings this suit to recover damages under Virginia common and statutory law for assault, battery, gross negligence, and wrongful death.

3. Plaintiff Melva Taylor Davis brings this action to recover damages under Virginia common law for intentional infliction of emotional distress.

## Jurisdiction, Venue, and Intradistrict Assignment

4. This Court has subject matter jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1441. This Court has subject matter jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367. Declaratory judgment is sought pursuant to 28 U.S.C.

- 2 -

§§ 2201 and 2202.

5. Venue is proper in the Western District of Virginia pursuant to 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to the claims asserted occurred in this district.

6. Assignment to the Lynchburg Division of the Western District of Virginia is proper pursuant to Standing Order of the Western District of Virginia because a substantial part of the acts or omissions giving rise to the claims asserted occurred in this Division.

## Parties

7. Plaintiff Melva Taylor Davis ("Davis") is the mother of Sanchez Jarkel Taylor ("Taylor"). Davis was a resident of the City of Lynchburg at the time her son was killed.

8. Melva Taylor Davis qualified in the Lynchburg, Virginia Circuit Court Clerk's Office as Administratrix of the Estate of Sanchez Jarkel Taylor on January 23, 2006. Acting as the representative of the Estate, Davis asserts claims on behalf of the deceased Taylor. Taylor was 28 years old and a resident of Lynchburg when he was killed. He was unmarried without children, survived by his parents, Melva Taylor Davis and Raynard Graham as his sole heirs at law. He is also survived by his half brothers, Ian Holmes and Ryan Holmes and his half sister, Dorn Graham as statutory beneficiaries along with his parents for wrongful death under § 8.01-50 of the Code of Virginia 1950 as amended. These beneficiaries have sustained and will continue to sustain financial and pecuniary loss as a result of the death of Sanchez Jarkel Taylor and have suffered and will continue to suffer severe mental anguish as the loss of his companionship, comfort, kindly offices and advice. Plaintiff claims damages against the defendants on behalf of Decedent's beneficiaries.

9. Defendant Amherst County, Virginia is a territorial division of the Commonwealth of Virginia constituting the local government and providing operational policies and practices for Public Safety including law enforcement and the Sheriff's Department. Upon information and belief, as of June 16, 2005, the final policymakers with respect to the operating policies and practices of the Amherst County Department of Public Safety and Sheriff's Department were Defendant, Bryan David ("David") in his capacity as County Administrator, Defendant, Gary Roakes ("Roakes") in his capacity as Director of Public Safety and Defendant L. J. Ayers, III ("Ayers"), in his capacity as Sheriff of Amherst County, Virginia. Defendant Bryan David was formerly County Administrator for Amherst County.

10. Defendant Debbie Tinnell ("Tinnell"), whom Plaintiffs sue in her individual capacity, was an Investigator with the Amherst County Sheriff's Department who on June 16, 2005 was in the vicinity of Route 29 near Bethel Welding and responded to Dispatch call of an unoccupied vehicle in the passing lane of Route 29 North. Defendant Tinnell at all relevant times acted under color of state law and, in whole or in part, in her capacity as a Amherst County Sheriff's Department employee.

11. Defendant Daren Givens ("Givens"), whom Plaintiffs sue in his individual capacity, was a Sergeant in the Amherst County Sheriff's Department who on June 16, 2005 responded to Dispatch call of an unoccupied vehicle in the passing lane of Route 29 North. Defendant Givens at all relevant times acted under color of state law and, in whole or in part, in his capacity as a Sheriff's Department employee.

12. Defendant Brian Drewry ("Drewry"), whom Plaintiffs sue in his individual capacity, was at all relevant times a Deputy in the Amherst County Sheriff's Department who on June 16, 2005 responded to the Dispatch call of an unoccupied vehicle in the passing lane of Route

29 North. Defendant Drewry at all relevant times acted under color of state law and, in whole or in part, in his capacity as a Sheriff's Department employee.

13. Defendant D. K. Dodson ("Dodson"), whom Plaintiffs sue in his individual capacity, was at all relevant times a Deputy in the Amherst County Sheriff's Department and who on June 16, 2005 responded to Sergeant Givens call for additional units at Bethel Welding. Deputy Dodson at all relevant times acted under color of state law and, in whole or in part, in his capacity as a Sheriff's Department employee.

14. Defendant Betty Wise, ("Wise") whom Plaintiffs sue in her individual capacity, was at all relevant times a Deputy in the Amherst County Sheriff's Department and who on June 16, 2005 responded to Sergeant Givens call for additional units at Bethel Welding. Deputy Wise at all relevant times acted under color of state law, in whole or in part, in her capacity as a Sheriff's Department employee.

15. Defendant L. J. Ayers, III, ("Ayers") whom Plaintiffs sue in his individual and official capacity was at all relevant times the Sheriff in Amherst County, Virginia, duly elected by the citizens of Amherst County. Defendant L.J. Ayers, III at all relevant times acted under color of state law and, in whole or in part, in his capacity as Sheriff and at who's pleasure Defendants, Tinnell, Givens, Drewry, Dodson, Wise and such John Does, as the case may be, were employed, served and acted as set forth in this complaint. Ayer's is responsible for the supervision of his employees. The Amherst County, Virginia Sheriff's Department is also known as the Sheriff's Office.

16. Defendants John Does are employees of the Amherst County, Virginia Sheriff's Department, and or The Virginia State Police, and or The Amherst, Virginia Town Police Department who were present while Taylor was being restrained, asphyxiated, and subjected to the

use of excessive force described in this Complaint. Such John Does may have actively participated and or fail to intervene or stop the use of such unlawful conduct or participated in failing to disclose the misconduct of others. The true names and capacities of such John Does are presently unknown to the Plaintiffs. Plaintiffs allege on information and belief that each of them is responsible in some manner for the injuries alleged herein and the death of Taylor. Plaintiffs sue John Does by such fictitious names and will seek leave to amend this Complaint to add their true names when the same have been ascertained.

### **Factual Allegations**

17.    On or about June 16, 2005 around 5:00 p.m. Sanchez Jarkel Taylor was driving a 2001 White Volkswagen Jetta in the passing lane on Route 29 North in Amherst County, Virginia near Bethel Welding. The car ran out of gasoline. Taylor left the vehicle in the road and walked up the driveway to Bethel Welding. Bethel Welding was closed.

18.    Carla Latshaw, a neighbor to Bethel Welding reported she approached Taylor, asked him if he needed help, to which she reports, he did not respond. Latshaw reported she approached Taylor because she thought he was going to try to talk to two Mexican workers, who worked for her son's concrete business. Latshaw reported the Mexican workers didn't speak English well. Latshaw called 911 and reported that a black male was trying to break into Bethel Welding and had been in her backyard.

19.    A number of motorists including truckers, traveling Route 29 North called 911 and reported to the Amherst County Dispatch the unoccupied vehicle in the road.

20.    Deputy Tinnell was the first law enforcement official to arrive around 5:14 p.m. in response to the unoccupied vehicle in the road. She reports two white guys running up Route 29 said

the driver of the unoccupied vehicle had run into the woods. She reports the vehicle was locked, with no key in the ignition.

21. Within minutes of Tinnell's arrival Sergeant Daren Givens and Deputy Brian Drewry arrived at the scene of the unoccupied vehicle on Route 29. Soon thereafter Dispatch reports Latshaw's call of a black male attempting a Breaking and Entering at Bethel Welding.

22. Tinnell and Givens drove up the driveway to Bethel Welding leaving Deputy Brian Drewry with the unoccupied vehicle on Route 29.

23. Tinnell reports she went around the South side of the building with her weapon drawn, that Taylor was standing on a ladder with his hands up against the garage door with an object in his left hand. She reports that she ordered him to get on the ground, that Taylor dropped the object he had in his hand and went from his feet to his knees on the ladder with his hands on the concrete wall (Dock area) of the building. Upon information and belief, the Plaintiffs allege the ladder was not vertical for climbing, but based on reports it was either sideways against the building or flat on the ground. Tinnell later identified the object in Taylor's hand as a key chain

24. Taylor was complying with Tinnell's command.

25. Sergeant Givens approached the Bethel Welding building from the North side with his weapon drawn. He reports he hosted his weapon, pulled out his mace and sprayed Taylor on the right side of his face near his right eye.

26. Tinnell reports that she hit Taylor with her baton on his left hand.

27. It is reported Givens picked Taylor up by his shoulder and threw him face down on the ladder where Taylor in compliance to Tinnell had gone to his knees. Givens took Tinnell's baton and placed it between Taylor's arm and chest, grabbed Taylor's right arm, Tinnell grabbed Taylor's

- 7 -

left arm and with both arms behind Taylor, Tinnell handcuffed him while Givens restrained him on the ladder with Tinnell's baton.

28. Dispatch reports Taylor in custody at 5:22 p.m.

29. It is reported that after Taylor was handcuffed, Givens and Tinnell picked Taylor up off the ladder; they report he struggled as they started to walk him and they threw him down on a white metal ornamental rack. The rack has been referred to in reports as a plant stand, and coat rack with spear like tips.

30. Givens called for additional Units to respond.

31. Drewry responds to the call for additional units, drives up the driveway to Bethel Welding and reports that he found Givens and Tinnell with Taylor face down on the white metal ornamental coat rack, that he joined in this restraint of Taylor and put his knee on Taylor's left shoulder and held Taylor's head down with his hands.

32. Dodson reports he responds to the call for additional units and joins Tinnell, Givens, and Drewry and puts his knee on Taylor's right shoulder and holds down the middle of Taylor's back.

33. It is reported Tinnell, Givens, Drewry, and Dodson picked Taylor up and started to walk Taylor towards the front of the building, they report Taylor started to struggle and they picked Taylor back up and threw him face down with his legs bent towards his handcuffed hands with Givens yelling for a hobble restraint.

34. In this third episode of restraint it is reported that Drewry held Taylor down by his shoulders with his knees and hands, Dodson and Tinnell were on the middle of Taylor's body and

Givens had Taylor's legs, which Givens had bent and brought to Taylor's handcuffed hands for hog-tying.

35. Tinnell went to get the hobble restraint Givens had yelled for, and met Wise who had arrived in response to the request for additional units. Tinnell and Wise returned to where Taylor was being restrained in the hog-tying position by Givens, Drewry, and Dodson. Wise handed Givens two flex cuffs.

36. It is reported, Givens angrily threw the flex cuffs on the ground and asked Wise to secure Taylor's feet while he went to his vehicle to get a hobble restraint. Wise took over holding Taylor's feet in the hog-tying position.

37. Drewry then observes that Taylor is not breathing or moving and turns Taylor over on his side, his lips were turning blue, mucus coming out of his mouth, eyes rolled back in his head.

38. As a result of this incident, Taylor was restrained by officers, two holding his shoulders down with their knees, holding his head down with their hands and while his hands were already handcuffed, there was an attempt to cuff his hands to his feet while Taylor was faced down.

39. Taylor suffered the following injuries:

- Acute head injuries: Red abrasions to the left frontal and periorbital area 2x2 ½"; blue contusion to bridge of nose 0.37" in diameter; blue contusion to left cheek; 0.48" in diameter; blue contusion left upper lip, 0.2" diameter; red abrasions (fingernail-like) above left lip, tongue superficial lacerations and contusions.

- Acute Neck Injuries. Fingernail-like abrasion lateral left neck.

- 9 -

- Acute chest injuries: Broad red abrasion left shoulder 8x4"; Linear red abrasion right shoulder 1.7 x 0.25"; red-blue contusion right shoulder and upper chest (2.1 x 0.85").

- Acute Abdominal Injuries: Linear red contusion ½" x 1/8" lower right abdomen; red contusion along lower costral margin and epigastrim on the left 1.27 x 0.36"; peripancreatic red contusion.

- Acute Upper Extremity Injuries: Red abrasions on upper right arm 0.65" x 0.1" and 0.45" x 0.1"; purple contusion ¼" x 1/16" lateral to right antecubita; linear red abrasion 1" x 1/16" with blue contusion ¾" in diameter back of wrist of right arm; on the left elbow an avulsion laceration ½" in length with red linear abrasions 2" and 1 ¼" x 1/16" each; red abrasion of left hand near base of thumb 0.36" x 0.1"; two red abrasions proximal left forearm 0.11" x 0.05" and 0.25" x 0.08"; distal left forearm 0.28" x 0.11"; medial left arm four blue contusions ranging from ½" to 1 ¼" x ½".

- Lower Extremity Injuries: Right leg has knee red abrasions 0.47" x 0.18", 1.1" x 0.4", 0.25" x 0.25", anterior leg 2.37" x 0.75", 0.67" x 0.42", 0.27" x 0.27", 0.41" x 0.3", 1.4" x 0.9"; left leg has red and blue contusions distal left thigh 1.5" x 0.6"; red abrasions distal thigh 0.34" x 0.18" and 0.1" x 0.28"; left knee 0.51" x 0.38" red abrasions; 0.2" x 0.1" red abrasions and anterior left leg 0.6" x 0.4" red abrasion.

40. Taylor died from asphyxia due to multiple episodes of Police restraint.

41. The actions of law enforcement officers Tinnell, Givens, Drewry, Dodson, and Wise in

- 10 -

Case 6:07-cv-00017-NKM-mfu   Document 2   Filed 06/15/07   Page 10 of 20   Pageid#: 32

in their restraint of Taylor resulted in Taylor's death being classified by Dr. Gregory Wanger, the Medical Examiner, as a homicide.

42. Neither Tinnell nor Givens verbally told Mr. Taylor at any time that he was under arrest. Tinnell and Givens report only that they ordered Taylor to get on the ground. Taylor was attempting to comply with Defendant Tinnell's and Defendant Given's commands to get on the ground when he went from his feet to his knees on the ladder that was sideways up against the building or laying flat on the ground when he was sprayed with mace, hit with a baton and the baton was used by Givens between Taylor's arm and chest to restrain him face down on the ladder.

43. Taylor made no threatening gestures or statements to any of the officers. He was not armed. He had dropped the object Tinnell alleged he had in his hand, which Tinnell later identified as a key chain.

44. Upon information and belief plaintiffs allege there was insufficient evidence of an attempted breaking and entering by Taylor at Bethel Welding and the response of Tinnell and Givens to the presence of Taylor, an African American who had left the vehicle which ran out of gas in the road and walked up a near by drive way to a business for help, shocks the conscience of civilized persons and is intolerable in a society governed by laws and considerations of due process.

45. Defendants Tinnell, Givens, Drewry, Dodson, and Wise killed Mr. Taylor without any provocation. As the direct result of Defendants Tinnell, Givens, Drewry, Dodson, and Wise's unconstitutional action, Mr. Taylor was killed. Defendants Tinnell, Givens, Drewry, Dodson, and Wise knew or should have known that it was clearly established law that a law enforcement officer may not constitutionally use excessive and unnecessary force on a citizen.

46. The attacks on Taylor was the direct result of customs, policies, and/or practices of the

County and the Sheriff's Department, for which Defendants David, Roakes, and Ayers were responsible, that encouraged and condoned the use of excessive force and failed to ensure that officers such as Defendants Tinnell, Givens, Drewry, Dodson, and Wise received the proper training and supervision necessary to avoid or minimize the need for the use of force, all of which manifested deliberate indifference on the part of these defendants to the right of citizens to be free from the use of excessive force.

47. Upon information and belief, it is a common and widespread custom or practice for Sheriff Department officers to use force on citizens, and to do so without sufficient regard for the severity of the situation or the need for such force. Defendants David, Roakes, Amherst County and L. J. Ayers, III, and the Sheriff's Department had, or should have had, knowledge of this custom or practice, yet failed to stop it, failed to impose internal checks against its continuance, and failed to investigate and/or impose discipline where appropriate in response to incidents that suggested the possible use of excessive force. The failure to respond to this custom or practice, which demonstrated deliberate indifference to the likelihood that constitutional violations would occur, was bound to lead to an incident such as the unconstitutional use of force utilized against Mr. Taylor and did, in fact, result in that unconstitutional use of force.

48. Upon information and belief, Defendants David, Roakes, Amherst County, A. J. Ayers, III, and the Sheriff's Department have failed to train their law enforcement officers adequately regarding proper methods for appropriately effecting an arrest without using excessive force.

49. As a result of this unconstitutional failure to train, and these unconstitutional customs, policies, or practices, Defendants David, Roakes, Amherst County and L. J. Ayers, III and the Sheriff's Department caused violations of Mr. Taylor's right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

50. As a direct and proximate result of the above-described conduct and actions of each of the

Defendants, Mr. Taylor suffered the injury of death, and his mother, Mrs. Davis, his father, Raynard Graham, and his siblings suffered, and continue to suffer, severe emotional distress.

51. Upon information and belief, at all relevant times, Defendants acted with ill-will, improper motive, and actual malice.

## COUNT I

### (Assault/Wrongful Death Claim by Mr. Taylor's Estate Against Defendant Tinnell and Defendant Givens)

52. The allegations of paragraphs 1 to 51 are incorporated as though fully set forth here.

53. Defendants Tinnell and Givens committed the common law tort of assault. Defendants Tinnell and Givens physical actions towards Taylor were done with the intent to cause harmful contact with Mr. Taylor, which created in Mr. Taylor's mind a reasonable apprehension of imminent contact. Defendants Tinnell and Givens had no legal justification or excuse for committing this wrongful act.

54. As a direct and proximate result of the conduct and actions of the Defendants Tinnell and Givens, Mr. Taylor suffered the injury of death.

55. **WHEREFORE**, Defendants Tinnell and Givens violation of Mr. Taylor's right to be free from assault establishes a cause of action for assault under Virginia common law and for wrongful death under Va. Code § 8.01-50 and justifies the award of monetary relief consisting of compensatory damages and punitive damages in amounts to be established at trial, and attorney fees and costs to the Estate.

## COUNT II

### (Battery/Wrongful Death Claim by Mr. Taylor's Estate Against Defendant Tinnell, Defendant Givens, Defendant Drewry, Defendant Dodson, and Defendant Wise)

56. The allegations of paragraphs 1 to 55 are incorporated as though fully set forth here.

57. Defendants Tinnell, Givens, Drewry, Dodson, and Wise committed the common law tort of battery. By spraying Taylor with mace, hitting him with the baton, using the baton between Taylor's arm and chest to hold him face down with pressure on a ladder, by throwing him face down on a white metal ornamental rack with spear like tips which caused many of the lacerations, contusions, and abrasions on his body, using their knees on Taylor's shoulders to hold him face down on the metal rack, using hands to hold his head down on the metal rack, using their body to hold down the middle of Taylor preventing his diaphragm from being able to support human breathing, throwing him face down for at least a third time, continuing their knees on Taylor's shoulders and then bending his legs and bringing his legs to his hand cuffed arms for hog-tying and holding his legs and feet in the hog-tying position, Defendants Tinnell, Givens, Drewry, Dodson, and Wise committed an unwanted touching to which Mr. Taylor did not consent. Defendants Tinnell, Givens, Drewry, Dodson, and Wise had no legal justification or excuse for committing these shockingly wrongful acts of battery.

58. As a direct and proximate result of the conduct and actions of Defendants Tinnell, Givens, Drewry, Dodson, and Wise Mr. Taylor suffered the injury of death.

59. **WHEREFORE**, Defendants Tinnell, Givens, Drewry, Dodson, and Wise's violation of Mr. Taylor's right to be free from battery establishes a cause of action for battery under Virginia common law and for wrongful death under Va. Code § 8.01-50 and justifies the award of monetary relief consisting of compensatory damages and punitive damages in amounts to be established at trial, and attorney fees and costs to the Estate.

### COUNT III

(Gross Negligence/Wrongful Death Claim by Mr. Taylor's Estate
Against Defendant Tinnell, Defendant Givens, Defendant Drewry, and Defendant
Dodson, and Defendant Wise)

60. The allegations of paragraphs 1 to 59 are incorporated as though fully set forth here.

61. Defendants Tinnell, Givens, Drewry, Dodson, and Wise committed the common law tort of gross negligence. By spraying Taylor with mace, hitting him with the baton, using the baton between Taylor's arm and chest to hold him face down with pressure on a ladder, by throwing him face down on a white metal ornamental rack with spear like tips which caused many of the lacerations, contusions, and abrasions on his body, using their knees on Taylor's shoulders to hold him face down on the metal rack, using hands to hold his head down on the metal rack, using their body to hold down the middle of Taylor preventing his diaphragm from being able to support human breathing, throwing him face down for at least a third time, continuing their knees on Taylor's shoulders and then bending his legs and bringing his legs to his hand cuffed arms for hog-tying and holding his legs and feet in the hog-tying position, Defendants Tinnell, Givens, Drewry, Dodson, and Wise committed the common law tort of gross negligence. Defendants Tinnell and Givens, Drewry, Dodson and Wise's actions demonstrated indifference and constituted an utter disregard of prudence that amounted to a complete neglect of Mr. Taylor's safety.

62. As a direct and proximate result of the conduct and actions of Defendants Tinnell, Givens, Drewry, Dodson, and Wise, Mr. Taylor suffered the injury of death.

63. **WHEREFORE**, Defendants Tinnell, Givens, Drewry, and Dodson, violations of Mr. Taylor's right to be free from gross negligence establish a cause of action for gross negligence under Virginia common law and for wrongful death under Va. Code § 8.01-50 et seq and justify the award of monetary relief consisting of compensatory damages and punitive damages in amounts to be established at trial, and attorney fees and costs to the Estate.

## COUNT IV

(Excessive Force/42 U.S.C. § 1983 Claims by Mr. Taylor's Estate Against Defendants Tinnell, Givens, Drewry, Dodson, and Wise)

64. The allegations of paragraphs 1 to 63 are incorporated as though fully set forth here.

65. By their actions set forth above, Defendants Tinnell, Givens, Drewry, Dodson, and Wise, while acting under color of state law, wrongfully restrained Mr. Taylor in a show of arbitrary, excessive, and unreasonable force, in violation of Mr. Taylor's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

66. As a result of this unconstitutional deliberate and cruel excessive force used by these defendants, Mr. Taylor died. The defendants killed Mr. Taylor.

67. **WHEREFORE**, Defendants' violations of the Fourth and Fourteenth Amendments to the United States Constitution establish a cause of action, pursuant to 42 U.S.C. § 1983, for monetary relief consisting of compensatory damages and punitive damages in amounts to be established at trial, and attorney fees and costs to the Estate.

## COUNT V

(Supervisory Liability for Use of Excessive Force/42 U.S.C. § 1983 Claims by Mr. Taylor's Estate Against Defendants, Amherst County, Virginia, Bryan David, the Amherst Virginia Department of Public Safety, Gary Roakes, Sheriff L. J. Ayers, III, and the Amherst Sheriff's Department,

68. The allegations of paragraphs 1 to 67 are incorporated as though fully set forth here.

69. Defendants Amherst County, David, the Amherst Department of Public Safety, Roakes, Ayer's, and the Amherst Sheriff's Department, while acting under the color of state law, made decisions, and established the policies, customs, or practices relating to excessive force, that are set forth above.

Their indifference to training, discipline, sensitivity, and supervision of the defendant employees of the Sheriff's Department resulted in Taylor's death. Upon information and belief, the defendant employees, Defendants Tinnell, Givens, Drewry, Dodson, and Wise committed the above-detailed acts resulting in the death of Mr. Taylor as a direct result of these decisions, customs, policies, or practices. The direct result of these decisions, customs, policies, or practices was the unconstitutional use of excessive force on Mr. Taylor by Defendants Tinnell, Givens, Drewry, Dodson, and Wise, in violation of Mr. Taylor's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

70. **WHEREFORE**, Defendants' violations of the Fourth and Fourteenth Amendments to the United States Constitution establish a cause of action, pursuant to 42 U.S.C. § 1983, for declaratory relief, injunctive relief, monetary relief consisting of compensatory damages and punitive damages in amounts to be established at trial, and attorney fees and costs to the Estate.

### COUNT VI

(Intentional Infliction of Emotional Distress Claim by Mrs. Davis Against Defendants Tinnell, Givens, Drewry, Dodson, Wise, and Ayers)

71. The allegations of paragraphs 1 to 70 are incorporated as though fully set forth here.

72. Defendants Tinnell, Givens, Drewry, Dodson, Wise and Ayers intended their specific conduct and they knew or should have known that such cruelty would cause Mrs. Davis emotional distress. Such conduct was outrageous and intolerable, and offended the generally accepted standards of decency. Defendants Tinnell, Givens, Drewry, Dodson, Wise and Ayers committed the common law tort of intentional infliction of emotional distress.

73. As a direct and proximate result of the conduct and actions of Defendants Tinnell,

- 17 -
Case 6:07-cv-00017-NKM-mfu   Document 2   Filed 06/15/07   Page 17 of 20   Pageid#: 39

Givens, Drewry, Dodson, Wise and Ayers, Mrs. Davis suffered and continues to suffer emotional distress that is severe.

74. **WHEREFORE,** Defendants' violations of the common law tort of intentional infliction of emotional distress establishes a cause of action and justify an award of monetary relief consisting of compensatory damages and punitive damages in amounts to be established at trial, and attorney fees and costs to Mrs. Davis.

## COUNT VII

(Conspiracy to Violate Civil Rights
By Mr. Taylor's Estate against all Defendants).

75. The allegations of paragraphs 1 to 74 are incorporated as though fully set forth here.

76. Defendants acted jointly and in concert to violate Sanchez Jarkel Taylor's civil rights.

77. All defendants took some overt act in furtherance of the conspiracy. Namely, each defendant actually participated in the use of excessive force, or witnessed the use of excessive force but failed to intervene, or acquiesced in the actions taken and attempted to cover up the actions taken.

78. The acts and omissions of the defendants proximately caused Sanchez Jarkel Taylor's suffering, injuries and death.

79. The defendants knowingly participated in a conspiracy to violate Sanchez Jarkel Taylor's civil rights, thus subjecting him to pain, physical and mental injury, and death in violation of his rights under the Fourth and Fourteenth Amendments.

80. **WHEREFORE**, Defendants' conspiracy to violate Taylor's civil rights establishes a

cause of action, pursuant to 42 U.S.C. § 1983, for monetary relief consisting of compensatory damages and punitive damages in amounts to be established at trial, and attorney fees and costs to the Estate.

## Prayer for Relief

**WHEREFORE**, Plaintiff requests that this Court enter an order:

(1) Declaring that the acts, policies, and practices of each Defendant complained of herein violate the provisions of the Fourth and Fourteenth Amendments to the United States Constitution as set forth above;

(2) Declaring that the acts, policies, and practices of each Defendant complained of herein violate the common and statutory law of Virginia as set forth above;

(3) Enjoining Defendants Amherst County, Virginia, L.J. Ayers, III, The Amherst Department of Public Safety and the Amherst Sheriff's Department from endorsing any custom, policy, or practice that causes the use of excessive force or other unconstitutional conduct in the course of searches and seizures;

(4) Awarding to the Estate and Mrs. Davis compensatory damages and punitive damages in amounts to be determined at trial;

(5) Awarding to the Estate and Mrs. Davis their costs and reasonable attorney fees in this action; and

(6) Granting such other and further relief as this Court deems just and proper.

## Demand for Jury Trial

Plaintiffs demand a trial by jury on all counts set forth herein.

Dated: June 15, 2007

Respectfully submitted,

*[signature: Arelia S. Langhorne]*

Arelia S. Langhorne, VSB #16047
P.O. Box 2453
Lynchburg, VA 24505
*Street Address:*
2700 Langhorne Road
Lynchburg, VA 24501
Phone: (434) 528-1560
Fax: (434) 528-4993
Email: lawasl@comcast.net

*ATTORNEY FOR PLAINTIFFS*