CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JUN 13 2008
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| MELVA TAYLOR DAVIS, | CIVIL NO. 6:07cv00017 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION and ORDER |
| THE COUNTY OF AMHERST, VIRGINIA, ET AL., | |
| *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court on Defendants' motion to dismiss filed April 2, 2008 (docket no. 36). As permitted by my March 3, 2008 Memorandum Opinion and Order, Plaintiff Melva Taylor Davis, Personal Representative and Administratrix of the estate of Sanchez Jarkel Taylor, filed a Second Amended Complaint containing additional allegations against Sheriff L. J. Ayers, III acting in an individual capacity.[1] Plaintiff alleges Sheriff Ayers participated in a conspiracy to cover-up the illegal actions of his deputies that occurred during the arrest of Mr. Taylor. Because Plaintiff has failed to identify a constitutional or federal right that was violated as a result of the alleged conspiracy, Defendants' motion is GRANTED.

## I. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule

---

[1] Plaintiff's Second Amended Complaint is identical to her prior Amended Complaint, except for paragraphs 76 through 80, which contain new allegations against Sheriff Ayers. I will limit my discussion to Plaintiff's new allegations. My March 3, 2008 Memorandum Opinion and Order granted Plaintiff leave to amend her complaint only to the extent she wished to alter her claim against Sheriff Ayer's acting in an individual capacity. My previous orders remain in effect as to the unaltered material contained in the Second Amended Complaint.

12(b)(6) motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.* at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (alteration in original omitted) (citations omitted) (internal quotation marks omitted). Instead, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"; plaintiffs must "nudge[] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Id.* at 1974. As the Fourth Circuit has held, a plaintiff "must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–45 (4th Cir. 2006).

## II. DISCUSSION

At issue is the limited question of whether Plaintiff has alleged facts sufficient to state a claim for civil conspiracy under 42 U.S.C. § 1983 against Sheriff Ayers acting in an individual capacity. In order to do so, Plaintiff must identify an underlying constitutional or federal right that was violated as a direct result of the conspiracy. Plaintiff has not identified any such right; therefore, Defendants' motion will be granted.

42 U.S.C. § 1983 provides a cause of action to those who have suffered a "deprivation of

any rights, privileges, or immunities secured by the Constitution and laws." But, "[s]ection 1983 itself creates no rights; rather it provides 'a method for vindicating federal rights elsewhere conferred.'" *Kendall v. City of Chesapeake*, 174 F.3d 437, 440 (4th Cir. 1999) (quoting *Albright v. Oliver*, 510 U.S. 266 (1994)). Thus, in order to state a claim for a § 1983 conspiracy, a plaintiff must allege that the conspiracy violated a right preserved by another federal law or by the Constitution. *Dwares v. City of N.Y.*, 985 F.2d 94, 99 (2d Cir. 1993). Giving Plaintiff the benefit of all reasonable inferences, her complaint raises three potential constitutional or federal violations, each of which I will discuss in turn.

### A. Excessive Force

Plaintiff's allegations of use of excessive force by the arresting deputies would be sufficient to support a claim for civil conspiracy, but Plaintiff has not alleged Ayers participated in the arrest. According to Plaintiff's allegations, Ayers first became aware of the failed arrest as Taylor was being transported to Lynchburg General Hospital. (2d. Am. Comp'l. ¶ 76.) Plaintiff attempts to bring Ayers into the excessive force conspiracy by arguing that Ayers' acts of concealment constitute overt acts in furtherance of the conspiracy. However, as the Seventh Circuit has stated, "persons who participate in the concealment are not *ipso facto* participants in the original conspiracy." *Hampton v. Hanrahan*, 600 F.2d 600, 622 (7th Cir. 1979), *rev'd in part on other grounds, Hanrahan v. Hampton*, 446 U.S. 774 (1980). The court in *Hampton*, relying on a comparison to the criminal law of conspiracy, reasoned that a defendant who only participates in the cover-up of an illegal act, is not liable for the underlying illegal act, absent proof "that an agreement to conceal was part of the original conspiracy." *Id.*; *see also Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980) ("Plaintiff's theory seems to be that Angilly and Joyce, by conspiring to cover up McElroy's excessive use of force, became liable for

Case 6:07-cv-00017-NKM-mfu Document 49 Filed 06/13/08 Page 3 of 8 Pageid#: 293

McElroy's original tort. Plaintiff is incorrect.").[2] Plaintiff has not alleged the existence of an agreement to conceal prior to or at the time of the alleged use of excessive force. Consequently, Plaintiff has failed to state a claim against Sheriff Ayers for use of excessive force.

## B. Access to the Courts

Plaintiff argues that Ayers' acts of concealment infringed her right of access to the courts.[3] The Supreme Court has long recognized a constitutional right of access to the courts. *See, e.g., Wolff v. McDonnnell*, 418 U.S. 529, 579 (1974); *Chambers v. Balt. & Ohio R.R.*, 207 U.S. 142, 148 (1907). Recently, the Court clarified the contours of the right of access in the context of an alleged cover-up in *Christopher v. Harbury*, 536 U.S. 403 (2002). The plaintiff in *Harbury*, the widow of a murdered Guatemalan citizen, claimed that her right of access to the courts had been infringed by federal officials who purposefully deceived her into believing they had no knowledge of her husband's whereabouts. *Id.* at 405. Harbury claimed that had these officials not deceived her, she would have been able to bring a lawsuit that might have saved her husband's life. *Id.* The Court ruled against Harbury holding she had failed "to identify an underlying cause of action for relief that the plaintiff would have raised had it not been for the deception alleged." *Id.*

The Court in *Harbury* began its analysis by identifying two broad classes of denial-of-access claims: forward-looking denials and backward-looking denials. *Id.* at 413. Forward-

---

[2] A number of circuits have held that one cannot join a conspiracy to violate another's rights if the victim is already deceased. *See Judge v. City of Lowell*, 160 F.3d 67, 76 n.15 (1st Cir. 1998) ("[A]ll of the actions that form the basis of Judge's claims occurred subsequent to Weems's death. At that time, Weems had no rights of which he could be deprived."); *Ford v. Moore*, 237 F.3d 156, 165 (2d Cir. 2001) ("Even if there were a viable claim against Moore for conduct after Ford's death, the death would have extinguished any claim of Ford's"); *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 749 (10th Cir. 1980) ("[T]he civil rights of a person cannot be violated once that person has died."). However, because Plaintiff has failed to allege the existence of an agreement prior to the alleged use of excessive force, it is not necessary to decide whether Taylor was deceased at the time Ayers joined the conspiracy.
[3] The constitutional right of access to the courts is held by Plaintiff personally, not as administratix of her son's estate. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1523 (7th Cir. 1990) ("The victims of a cover-up are the decedent's survivors, not the decedent himself.").

looking denials arise from "systematic official action [that] frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* As an example of this type of denial, the Court cited prison-litigation cases in which a plaintiff seeks access to a law library in order to prepare a lawsuit. *Id.* Backward-looking denials concern claims that "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Id.* at 413–14. These are cases in which official acts have harmed the plaintiff by causing "the loss or inadequate settlement of a meritorious case." *Id.* at 414.

After concluding its taxonomy of access to court claims, the Court extracted a central principle underlying both categories, stating "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414–15. An access claim, in effect, affords a plaintiff a second chance to litigate a claim which has been frustrated in some manner by official action. *Id.* at 416. However, the Court cautioned that access claims create a "natural temptation on the part of plaintiffs to claim too much, by alleging more than might be shown in a full trial focused solely on the details of the predicate action." *Id.* Therefore, the Court held that (1) "the claim [must] be described well enough to apply the 'nonfrivolous' test and show that the 'arguable' nature of the claim is more than hope"; and (2) "the remedy sought must itself be identified to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a preexisting claim." *Id.*

Plaintiff has not complied with either part of the *Harbury* test. The Second Amended Complaint describes acts allegedly committed by Ayers in an attempt to conceal misconduct during the arrest,[4] but fails to identify any constitutional or federal right infringed. Plaintiff's

---

[4]Plaintiff alleges that Ayers directed one of his internal investigators and a Virginia State Police Officer to falsely inform her that her son died of a drug overdose. (2nd. Am. Comp. ¶ 78.) Plaintiff also claims Sheriff Ayers

-5-

allegations, if true, would constitute serious moral and ethical transgressions and might violate state statutes governing police conduct. However, Plaintiff has not cited a single case or statute in support of her claims, beyond a general reference to the 4th and 14th Amendments. Assuming Plaintiff could identify a right violated, she would still run afoul of the second part of the *Harbury* test because she has not explained what unique remedy she seeks that would otherwise be unavailable.

### C. False Arrest Warrant

Plaintiff alleges that Sheriff Ayers, when informed that Taylor would soon be pronounced dead, ordered Deputy Tinnell to appear before a magistrate in order to obtain an arrest warrant against Taylor for breaking and entering, "knowing the same lacked probable cause, and that it would never be served." (2d. Am. Comp'l. ¶ 77.) Plaintiff argues that the procurement of a false arrest warrant violated Taylor's Fourth amendment rights. Generally, Fourth Amendment protections are not triggered until there has been a search or seizure. *See, e.g., Michigan v. Chesternut*, 486 U.S. 567 (1988). Although the point at which a seizure commences is not easily demarcated, the Supreme Court has stated that, as a rule, seizure of an individual commences when "a reasonable person would have believed he was not free to leave." *Id.* at 573 (*quoting United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). As the Court stated in *Terry v. Ohio*, 392 U.S. 1 (1968), "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* at 19 n.16.

---

attempted to improperly influence personnel in the Medical Examiner's office so that Taylor's death would not be classified as a homicide. (Id. ¶ 79.) Finally, Plaintiff alleges that Sheriff Ayers, along with his own internal investigators and the Virginia State Police, have "failed to complete their investigation to the satisfaction of the Commonwealth's Attorney's Office." (Id. ¶ 80.) As a result, no formal decision has been released by the Commonwealth's Attorney's Office as to whether any of the officers directly involved will be prosecuted, "thereby impeding the pursuit of this civil cause of action." (Id. ¶ 80.) Plaintiff's claim that a false arrest warrant was issued is discussed below.

Case 6:07-cv-00017-NKM-mfu  Document 49  Filed 06/13/08  Page 6 of 8  Pageid#: 296

Deputy Tinnell's application for an arrest warrant did not restrain the liberty of Taylor within the meaning of the Fourth Amendment. Taylor was not aware of the warrant's existence and thus was not capable of feeling that he was "not free to leave" as a result of the arrest warrant.[5] Even in cases in which an individual was aware the existence of legal process, courts have generally held that the mere existence of legal process is no seizure. *See, e.g., Martinez v. Carr*, 479 F.3d 1292, 1293 (10th Cir. 2007) (holding no seizure occurred when a police officer issued "a criminal citation and threaten[ed] jail if he declined to sign the citation."); *DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir.1999) (stating that "issuance of a [traffic] summons alone, without any face-to-face encounter," is not a seizure). In sum, Taylor was not subjected to official seizure, and thus his Fourth amendment rights could not have been violated.

## III. CONCLUSION

Plaintiff has not identified a cognizable constitutional or federal right violated as a result of Sheriff Ayers' participation in the alleged conspiracy. Defendants' Motion is therefore GRANTED. Sheriff L. J. Ayers, III is DISMISSED from this case.

---

[5] In addition, because Taylor was already in custody at the time the warrant was issued, he suffered no constitutional injury, and Plaintiff therefore lacks standing. The Supreme Court has stated that "at an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some *actual or threatened injury* as a result of the putatively illegal conduct of the defendant,' and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.'" *Valley Forge Christian Coll. v. Am.'s United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (citations omitted) (emphasis added). On these facts, Taylor suffered no constitutional injury because he was already in custody, and thus had already been "seized."

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.

ENTERED: This 13th day of June, 2008.

*Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE